## FLATHEAD COUNTY STATE BANK, APPELLANT, *v.* INGHAM, EXECUTRIX, RESPONDENT.

(No. 3,579.)

(Submitted November 3, 1915.   Decided December 8, 1915.)

[153 Pac. 1005.]

*Partnership—Contract—Insufficiency of Evidence.*

1. A contract which provided that A should furnish B money to purchase horses; B to ship the animals to A for sale; A to repay himself for the money advanced from the proceeds of the sales and to receive a commission; A and B to divide the profits equally—*held* not to have constituted the parties partners.

[As to mutual agency among partners, see note in 115 Am. St. Rep. 413.]

*Appeal from District Court, Custer County; C. C. Hurley, Judge.*

ACTION by the Flathead County State Bank against Myrtle
M. Ingham, as executrix of the estate of C. B. Ingham, deceased.
From a judgment in favor of defendant, and from an order de-
nying it a new trial, plaintiff appealed.  Affirmed.

*Mr. Sharpless Walker* and *Mr. Edgar B. Merrill,* for Appel-
lant, submitted a brief, as well as one in reply to that of
Respondent; *Mr. Walker* argued the cause orally.

Where persons associate themselves together in business un-
der certain requisite conditions, a partnership may be formed
whether the parties had in mind the legal consequences or not.
(30 Cyc. 360; *Meehan* v. *Valentine,* 145 U. S. 611, 36 L. Ed.
835, 12 Sup. Ct. Rep. 972; *Freeman* v. *Huttig Sash & Door Co.,*
105 Tex. 560, 153 S. W. 122; *Buford* v. *Lewis,* 87 Ark. 412, 112
S. W. 963; *Beecher* v. *Bush,* 45 Mich. 188, 40 Am. Rep. 465,
7 N. W. 785; *Spaulding* v. *Stubbings,* 86 Wis. 255, 39 Am. St.
Rep. 888, 56 N. W. 469.)

The decisive test as to whether a partnership actually ex-
isted was one of intention of the parties—an intention to carry
on the business together and share the profits as joint owners
of the partnership property.  (George on Partnership, p. 53;
*McAlpine* v. *Millen,* 104 Minn. 289, 116 N. W. 583; *Haswell* v.
*Standring,* 152 Iowa, 291, Ann. Cas. 1913B, 1326, 132 N. W.
417; *Johnson Bros.* v. *Carter & Co.,* 120 Iowa, 355, 94 N. W.
850.)

Though there is no express agreement in a partnership con-
tract to share losses, an agreement to share profits amounts
*prima facie* to an agreement to share losses also.  (*Bentley* v.
*Brossard,* 33 Utah, 396, 94 Pac. 736, 737.)

The question of copartnership, except in cases of estoppel,
is substantially the same whether in a controversy between the
alleged partners or when the question is raised by a third per-
son, except that the courts will be satisfied with a slighter de-
gree of proof to show the partnership where third persons are
a party to the controversy than when it is one between the
alleged copartners.  (*Rosenbaum* v. *Howard,* 69 Minn. 41, 71

N. W. 823; *Kaufman* v. *Kaufman,* 222 Pa. 58, 70 Atl. 956; *Leggett* v. *Hyde,* 58 N. Y. 272, 17 Am. Rep. 244; *McDonald Bros.* v. *Campbell & Bergeson,* 96 Minn. 87, 104 N. W. 760.)

While no man can be made a partner without his consent, yet if he consents to an arrangement which really is a partnership, he will be a partner, although he does not so intend. (*Cook* v. *Carpenter,* 34 Vt. 121, 80 Am. Dec. 670; *Manhattan Brass & Mfg. Co.* v. *Sears,* 45 N. Y. 797, 6 Am. Rep. 177.)

*Messrs. Loud, Collins, Campbell, Wood & Leavitt,* for Respondent, submitted a brief; *Mr. Chas. S. Loud* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1912, Harvey Jones overdrew his account with the Flathead State Bank, of Polson, to the extent of $904, and this action was instituted against him and C. B. Ingham to recover the amount with interest. Ingham died and the executrix of his estate was substituted as a defendant. Jones defaulted, and the cause was tried upon issues raised by the complaint and the separate answer of the executrix. The only question for determination was whether Jones and Ingham were partners at the time the indebtedness was incurred. The inquiry was answered by the jury in the negative, and plaintiff appealed.

The complaint alleges that Jones and Ingham were copartners [1] engaged in buying and selling horses, and that the indebtedness was incurred by Jones in the due course of such partnership business. These allegations are denied and the answering defendant, by way of affirmative matter which amounts to denials, sets forth her version of the transactions between Jones and Ingham to be, that in 1912 these parties entered into an agreement by the terms of which Ingham was to furnish Jones certain money from time to time with which to purchase horses; that "Jones should ship all horses so purchased by him to Miles City, Montana, and that they should be sold at public auction

in the sales ring of the A. B. Clarke Horse Sales Company, of which said company the said C. B. Ingham was the sole and only proprietor, thereby enabling the said C. B. Ingham' upon the sale of said horses to repay himself all sums of money so furnished by him to the said Jones,  *  *  *  and also to obtain the regular commissions charged by the A. B. Clarke Horse Sales Company for the sale of horses through its sales ring''; and that this agreement was carried into effect.  These allegations are admitted in the reply.  The answer alleges that Ingham was to receive a stated amount of interest upon the sums advanced to Jones.  This allegation is denied and the reply asserts that under the agreement Ingham was to receive one-half of the profits arising from the transactions.  There is not any disputed question of fact raised by the evidence which tends to establish the plaintiff's version of the agreement as set forth above.

Ingham advanced to Jones something over $8,000 by honoring checks and drafts drawn upon him.  Jones made three shipments of horses to the Miles City market and these horses were sold pursuant to the agreement, and the net proceeds, after deducting shipping, yard, feed and commission charges, were. applied to the repayment of money advanced by Ingham.  The transactions resulted in a substantial loss and Ingham refused to honor a draft intended to cover the overdraft in the Polson bank.  Before the horses were shipped to market they were branded with Ingham's brand at his suggestion, and the last shipment was made in July upon Ingham's instructions.

The trial court instructed the jury, without objection from the plaintiff, that ''in this case no proof has been introduced and it is not contended that C. B. Ingham permitted himself to be represented as a partner with the said Harvey Jones, and therefore he was not liable as a partner unless he was such in fact.''  This instruction is conclusive upon the parties in this court (sec. 6746, Rev. Codes), and, with the admissions in the pleadings, narrows the issues to the single inquiry: Did the contract which provided: (a) Ingham should furnish Jones

money to purchase horses; (b) Jones should ship the horses so purchased to Miles City for sale at auction by the sales company; (c) Ingham should repay himself for the money advanced from the proceeds of the sales; (d) the sales company —Ingham—should receive the regular commission from such sales; and (e) Jones and Ingham should divide the profits, if any, equally, constitute the parties to the agreement partners? That it did not do so, as a matter of law, is apparent at once. The conclusion in *Beasley* v. *Berry,* 33 Mont. 477, 84 Pac. 791, where this court considered the question upon a very similar state of facts, is decisive here. Under the circumstances, the intention of the parties was the controlling consideration (*Beasley* v. *Berry,* above) ; and it cannot be said that the evidence preponderates in favor of the plaintiff, who had the burden of proof. The intention could only be ascertained as an inference from the conduct of the parties, and in so far as that intention is made manifest by the terms of the agreement itself, it would appear to negative the idea that a partnership was within the contemplation of the parties. That Ingham should be repaid the money advanced to Jones, or, that he should be paid the regular commission for making the sales, is inconsistent with the notion that the money advanced became partnership funds or that the horses when purchased became partnership property. But whether the evidence preponderated in favor of the answering defendant, it certainly did not make out a case for plaintiff so clear and convincing that the jury ought to have found for it.

The charge of the court in its entirety fully and fairly covered the case. We have considered every assignment made by appellant, but fail to discover any substantial error in the trial court's rulings.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.